Argued and submitted March 5, 2010, reversed and remanded February 16, 2011

In the Matter of the Compensation of
Daniel R. Minyard, Claimant.

BASIN TIRE SERVICE, INC.
and Argonaut Insurance Company,
*Petitioners,*

*v.*

Daniel R. MINYARD,
*Respondent.*

Workers' Compensation Board
0704082, 0704111; A139891

249 P3d 127

Jerald P. Keene argued the cause and filed the briefs for petitioners.

Jon Correll argued the cause and filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Duncan, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Employer seeks review of a Workers' Compensation Board order that requires it to pay for a surgery necessitated by a worsening of claimant's previously accepted L4-5 disc condition. We review for substantial evidence and errors of law, ORS 183.482(8), and reverse and remand.

Claimant sustained a June 2003 back injury while lifting a tire at work and filed a claim for workers' compensation benefits. Employer's workers' compensation insurer accepted a claim for an L4-5 disc herniation.[1] About one month after the injury, claimant underwent a left L4 hemi-laminotomy with L4-5 diskectomy. Claimant's condition was determined to be medically stationary as of November 2003, and the claim was closed the following month with an award of 37 percent unscheduled permanent partial disability for claimant's low back. In April 2004, the board approved a claim disposition agreement (CDA) in which claimant released all rights to workers' compensation benefits for the accepted condition, except for medical services under ORS 656.245.[2]

Claimant continued to have low back and left leg pain after closure of his claim. In March 2006, claimant sought medical treatment following two non-work-related incidents that had increased his low back and left hip pain. That same month, claimant underwent a "[r]eop left L4-5 microlaminotomy and diskectomy with microdissection" performed by Dr. Keiper, whose post-operative diagnosis concluded that claimant had suffered from a "large recurrent disk herniation on the left at L4-5." The insurer paid for the March 2006 surgery but, apparently, did not process any claims or requests from claimant.

---

[1] The insurer's notice of acceptance identified the accepted condition as a right-side herniation, but that appears to have been a clerical error. As the ALJ noted, "[a]ll of the medical records indicate that claimant's L4-5 disc herniation was left-sided." Furthermore, the parties do not dispute that claimant's accepted condition involved a left-sided herniation and have litigated the claim with that understanding.

[2] ORS 656.236(1)(a) states, "The parties to a claim, by agreement, may make such disposition of any or all matters regarding a claim, except for medical services, as the parties consider reasonable, subject to such terms and conditions as the Workers' Compensation Board may prescribe."

After the March 2006 surgery, claimant continued to have discomfort in his back and left leg. A lumbar MRI showed a large recurrent left-posterior disc extrusion at L4-5, and Keiper recommended further surgery. Claimant also consulted another neurosurgeon, Dr. Noonan, who similarly concluded that claimant required further surgery and requested authorization from the insurer to perform the surgery.

At the insurer's request, Dr. Yodlowski performed a medical evaluation and identified disc dessiccation at L2-3 and L4-5 as preexisting conditions, which she concluded combined with claimant's 2003 work injury to cause the disability and require treatment in 2003. Furthermore, Yodlowski believed that one of claimant's non-work-related injury incidents had combined with the preexisting condition to become the major contributing cause of claimant's condition after March 2006, based on an assumption that claimant had been free of symptoms and did not require medical treatment between 2003 and 2006. In contrast, Noonan concluded that claimant's "left L4-5 recurrent disk herniation was caused in major part by a combination of the initial work injury and the two subsequent surgeries paid for by the workers' compensation insurer." In June 2007, the insurer denied claimant's "request for authorization of a L4-5 redo Micro Lumbar discectomy and L4-5 transforaminal lumbar interbody fusion with iliac crest bone graft from J. Christopher Noonan, MD."

Claimant requested a hearing, which resulted in an order by an administrative law judge (ALJ) setting aside the insurer's denial on the ground that "claimant's recurrent L4-5 disc herniation condition and need for medical services is materially related to the accepted June 26, 2003 work injury." Employer appealed to the board, which affirmed the ALJ's order. Before the board, employer renewed its argument that the major contributing cause of claimant's worsened condition was an injury occurring outside the course and scope of his employment, which, under ORS 656.273(1), meant that claimant's condition was not compensable.[3] The

---

[3] ORS 656.273(1) provides, in part, that, "if the major contributing cause of [a] worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable."

board disagreed and concluded that, "[i]n light of the April 2004 CDA, claimant has released his aggravation rights and, therefore, ORS 656.273 does not apply. Instead, the only issue that can be litigated is medical services." (Footnote omitted.) Based on that reasoning, the board concluded that the compensability of the proposed surgery for claimant's L4-5 disc condition was subject to a material contributing cause standard, which it found to be met.

The board also reached an alternative conclusion on that issue:

"[E]ven if we assume that the employer may raise an affirmative defense under ORS 656.273(1), we find that the employer has not sustained its burden of proving that 'the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment[.]' In that regard, we agree with the ALJ's finding that the June 26, 2003 work injury was the major contributing cause of claimant's need for the treatment of the recurrent L4-5 disc herniation."

In addition, the board addressed employer's alternative argument that the ALJ had erred in applying a material cause standard because, according to employer, claimant has a preexisting condition under ORS 656.005(24)(a)(B)(iii) and, therefore, on the facts in this case, a combined condition, making the major contributing cause standard applicable to the claim. *See* ORS 656.245(1)(a) (explaining that, if treatment is sought for a combined or consequential condition, the insurer need only pay for "medical services directed to medical conditions caused in major part by the injury"). Noting that ORS 656.005(24)(a)(B)(iii) applies only to "claims for a worsening pursuant to ORS 656.273 or 656.278[,]" the board rejected employer's argument because "this is a claim for medical services pursuant to ORS 656.245(1)" and "*not* a claim 'for a worsening pursuant to ORS 656.273.' " (Emphasis in original.) Furthermore, the board agreed with the ALJ's conclusion that the " 'major contributing cause' standard in ORS 656.245(1)(a) does not apply because the medical records do not establish that claimant's L4-5 disc condition is a combined or consequential condition."

On judicial review, employer first assigns error to the board's determination that the 2004 CDA barred employer from asserting the defense, otherwise available under ORS 656.273(1), that claimant's recurrent L4-5 disc herniation is not compensable because its major contributing cause is a non-work-related injury. As explained below, we agree with employer that the board did so err. We begin by discussing the relevant statutory framework.

Under ORS 656.245(1)(a) and (b),[4] workers with accepted claims generally are entitled to medical services for conditions caused in material part by a compensable injury, and insurers must provide compensable medical services for accepted conditions for the life of the worker. *See, e.g., Liberty Northwest Ins. Corp., Inc. v. Watkins,* 347 Or 687, 690-91, 227 P3d 1134 (2010). However, once a worker is determined to be medically stationary,[5] ORS 656.245(1)(c) provides that only limited types of medical services remain compensable. *See SAIF v. January,* 166 Or App 620, 625, 998 P2d 1286 (2000) (noting that ORS 656.245(1)(c) limits the disability compensation available to a medically stationary worker).

For medical services of the type at issue here, that is, surgery for a condition that has worsened after a worker has become medically stationary, the medical benefit is available only through an accepted aggravation claim under ORS

---

[4] ORS 656.245 provides, in part:

"(1)(a) For every compensable injury, the insurer or the self-insured employer shall cause to be provided medical services for conditions caused in material part by the injury for such period as the nature of the injury or the process of the recovery requires, subject to the limitations in ORS 656.225, including such medical services as may be required after a determination of permanent disability. In addition, for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury.

"(b) Compensable medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services. * * * The duty to provide such medical services continues for the life of the worker."

[5] A worker's condition is medically stationary when "no further material improvement would reasonably be expected from medical treatment, or the passage of time." ORS 656.005(17).

656.273 or an order of the board issued pursuant to its own-motion authority under ORS 656.278 if the worker's aggravation rights under ORS 656.273 have expired. ORS 656.245(1)(c)(F), (G).[6] Under ORS 656.273, an injured worker may obtain additional medical services *and* disability compensation for a worsened condition by filing an aggravation claim with the insurer or self-insured employer within five years of the notice of closure or, alternatively, the date of injury in certain circumstances. ORS 656.273(1) - (4). However, ORS 656.273(1) establishes that a worsened condition is not compensable if the major contributing cause of the worsened condition is an injury that occurred outside the course and scope of employment.

■     As discussed above, the board reasoned that the 2004 CDA foreclosed claimant's ability to pursue an aggravation claim under ORS 656.273 and, thus, that the affirmative defense set out in ORS 656.273(1) does not apply to this case. However, a CDA cannot release a worker's right to medical services, and surgery of the type at issue here is a medical service that a worker whose compensable condition has become medically stationary can receive pursuant to an accepted aggravation claim under ORS 656.273.[7] The board

---

[6] ORS 656.245(1)(c) provides, in relevant part:

"Notwithstanding any other provision of this chapter, medical services after the worker's condition is medically stationary are not compensable except for the following:

"* * * * *

"(F) Services provided pursuant to an accepted claim for aggravation under ORS 656.273.

"(G) Services provided pursuant to an order issued under ORS 656.278."

Additionally, we note that ORS 656.245(1)(c)(K) authorizes a medically stationary worker, with the approval of the Director of the Department of Consumer and Business Services, to receive "curative care arising from a generally recognized, nonexperimental advance in medical science since the worker's claim was closed that is highly likely to improve the worker's condition and that is otherwise justified by the circumstances of the claim." However, that circumstance is not presented here.

[7] *See* ORS 656.254(1)(c)(F); ORS 656.236(1) (providing that a CDA "resolves all matters and all rights to compensation, attorneys fees and penalties potentially arising out of claims, *except medical services*, regardless of the conditions stated in the agreement" (emphasis added)); *Liberty Northwest Ins. Corp., Inc.*, 347 Or at 694 ("[W]e conclude that a claimant cannot [through a CDA] dispose of 'all matters' and 'all rights to compensation, attorney fees and penalties potentially arising out of claims' where those matters and rights involve medical services.").

resolved the conundrum that its reasoning created—*viz.*, that the 2004 CDA prevents claimant from filing an aggravation claim, but a CDA cannot release a worker's right to receive medical services and the medical services at issue here are medical services that a worker is entitled to receive pursuant to an accepted aggravation claim—by concluding that claimant must thereby be entitled to pursue a claim for medical services for his recurrent L4-5 disc herniation pursuant to ORS 656.245(1)(a), which generally provides that workers are entitled to receive medical services for conditions that are materially caused by a work injury.

We reject the board's reasoning for two reasons. First, it would lead to the paradoxical effect that workers who enter into a CDA would receive a broader range of medical services than those who do not enter into one. A worker in claimant's circumstances who has not entered into a CDA would be required to have an accepted claim for aggravation in order to be entitled to receive the medical services at issue here. That means that the claim would have to meet the causation standard for a worsened condition and be subject to the affirmative defense under ORS 656.273(1).[8] According to the board's analysis, however, a worker who has entered into a CDA would not be required to meet the standards set forth in ORS 656.273 in order to receive the same medical services.

■       Second, and most importantly, the board fails to confront the fact that a worker whose condition has become medically stationary is not entitled to receive medical services of the type at issue here *except* by establishing an aggravation claim. ORS 656.245(1)(c)(F). As explained above, workers cannot release their right to medical services through a CDA. ORS 656.236(1); *Liberty Northwest Ins. Corp., Inc.*, 347 Or at 694. Accordingly, the 2004 CDA did not release claimant's

---

[8] ORS 656.273(1) sets forth the causation standard for an aggravation claim and the affirmative defense:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation for worsened conditions resulting from the original injury. * * * However, if the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment, the worsening is not compensable."

right to receive medical services, including the surgery proposed here to address claimant's recurrent L4-5 disc herniation. However, to exercise that right, a worker in claimant's circumstance must pursue an aggravation claim pursuant to ORS 656.273. *See* ORS 656.245(1)(c)(F). It follows that claimant is entitled to pursue such a claim in order to receive the medical services notwithstanding the 2004 CDA.[9] The board erred in concluding otherwise.

Employer asserts in its second assignment of error that the board erred in concluding that, if the affirmative defense under ORS 656.273(1) applies, then employer failed to prove that defense. As previously discussed, the board found that "the employer has not sustained its burden of proving [under ORS 656.273(1)] that 'the major contributing cause of the worsened condition is an injury not occurring within the course and scope of employment[.]' " The board further explained, "In that regard, we agree with the ALJ's finding that the June 26, 2003 work injury was the major contributing cause of claimant's need for treatment of the recurrent L4-5 disc herniation."

Employer contends that the board erred in relying on the ALJ's finding regarding the major contributing cause of "claimant's *need for treatment*" to resolve whether employer had met its burden to prove the "major contributing cause of the *worsened condition*," because those are not the same thing, that is, they involve different compensability standards. (Underlining omitted; emphases added.) Additionally, employer asserts that the board's conclusion is not supported by substantial reason because the board never explained how a "failure to satisfy one standard (major cause of the need for treatment) equated to a failure to satisfy the other standard (major cause of the worsened condition)."

---

[9] We recognize that we have previously concluded that a CDA can preclude a claimant's subsequent claim for aggravation of an accepted condition and, thus, that our conclusion in this case may appear to be at odds with existing case law. *See Krieger v. Future Logging*, 116 Or App 537, 540, 842 P2d 428 (1992), *rev den*, 316 Or 528 (1993); *Safeway Stores, Inc. v. Seney*, 124 Or App 450, 454, 863 P2d 528 (1993). However, those cases are distinguishable from the present case because they involved whether a CDA could preclude aggravation claims for additional workers' compensation benefits *other than* medical services. Accordingly, our analysis here does not run afoul of the conclusions that we reached in *Safeway Stores, Inc.,* and *Krieger*.

In some cases, the nature of the treatment and the condition may result in the major cause of one being synonymous with the other. *See, e.g., Robinson v. SAIF*, 147 Or App 157, 162, 935 P2d 454 (1997) (noting that, in that case, there was no difference between the major contributing cause of the claimant's hernia and the major contributing cause of the need for treatment of the hernia); *SAIF v. Nehl*, 149 Or App 309, 313, 942 P2d 859 (1997), *rev den*, 326 Or 389 (1998) ("In *Robinson*, we did not need to distinguish between the major cause of claimant's combined condition and the major cause of claimant's need for treatment, because they were the same."). We need not decide whether that is the case here because of our resolution of the third assignment, in which we remand the case to the board for reconsideration. On reconsideration, the board will be able to address employer's objections to the board's finding that employer had not carried its burden under ORS 656.273(1).

■ In employer's third assignment of error, it argues that the board committed legal error in analyzing whether claimant has a preexisting condition and, in turn, a combined condition. As a consequence of that, employer asserts, the board's rejection of the major contributing cause standard for the compensability of claimant's surgery is also flawed. In particular, employer argues that, "[u]nder ORS 656.005(24)(a)(B)(iii), the term 'preexisting condition' in 'claims for worsening pursuant to ORS 656.273' includes a qualifying condition that 'precedes the onset of the worsened condition.' " Accordingly, employer asserts that, because claimant was diagnosed with "degenerative disc disease" at the L4-5 level" in September 2003—that is, after his initial injury but before the current worsening—the board erred in concluding that the claim did not involve a preexisting condition. As the following discussion explains, we conclude that the board erred by failing to apply ORS 656.005(24)(a)(B)(iii) in resolving whether claimant has a preexisting condition.

■ As previously discussed, an injured worker is generally entitled under ORS 656.273 to additional medical services for worsened conditions resulting from the original injury. Concomitantly, once a worsened condition has been established, the worker's injury is necessarily no longer medically stationary and the worker is once again entitled to the

broader suite of medical services available under ORS 656.245(1)(a) for conditions caused in material part by the original compensable injury. *See* ORS 656.005(17) (a worker's injury is medically stationary when "no further material improvement would reasonably be expected from medical treatment, or the passage of time"). However, ORS 656.245(1)(a) also provides that, "for consequential and combined conditions described in ORS 656.005(7), the insurer or the self-insured employer shall cause to be provided only those medical services directed to medical conditions caused in major part by the injury."

ORS 656.005(7)(a)(B) provides, in turn, that

"[i]f an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

Further, ORS 656.005(24)(a) defines "preexisting condition" to include an injury or disease that contributes to disability or need for treatment, provided that:

"(A)  * * * the worker has been diagnosed with such condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis; and

"(B)(i)   In claims for an initial injury or omitted condition, the diagnosis or treatment precedes the initial injury;

"(ii)   In claims for a new medical condition, the diagnosis or treatment precedes the onset of the new medical condition; or

"(iii)   In claims for a worsening pursuant to ORS 656.273 or 656.278, *the diagnosis or treatment precedes the onset of the worsened condition.*"

(Emphasis added.)

The board concluded that ORS 656.005(24)(a)(B)(iii) does not apply to this case based on its conclusion that "this is *not* a claim 'for a worsening pursuant to ORS 656.273.'" (Emphasis in original.) As explained above, the board erred

in concluding that ORS 656.273 does not apply to claimant's claim for medical services for his worsened condition. It follows that it also erred in failing to apply ORS 656.005(24)(a)(B)(iii) to the claim. Hence, the board must address the application of that statute to this case on remand.

Reversed and remanded.